UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN SAUER, Successor Personal
Representative of the Estate of
LATROYA MACDOO,

    Plaintiff,

v.

KAZ ENTERPRISE, INC., d/b/a LOUIE'S
SPORTS BAR & RESTAURANT, OZELL
QUINN and CHARLES TUNSTALL,

    Defendants.
_____/

File No. 1:11-CV-1078

HON. ROBERT HOLMES BELL

## **OPINION**

In this combined automobile negligence/dramshop action, Plaintiff alleges that its decedent, Latroya Macdoo, was killed as a result of being struck by a vehicle operated by Defendant Ozell Quinn after he was served alcohol by Defendant Kaz Enterprise, Inc., d/b/a Louie's Sports Bar & Restaurant ("Louie's"). This matter is before the Court on Defendant Louie's motion for summary judgment. (Dkt. No. 93.) Louie's contends that there is not sufficient evidence to create a triable issue as to whether Louie's served Ozell Quinn alcohol while he was visibly intoxicated. For the reasons that follow, Louie's motion will be denied.

**I.**

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If Defendant carries its burden of showing there is an absence of evidence to support a claim, Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

In considering a motion for summary judgment, "the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Martin v. Cincinnati Gas and Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)). Nevertheless, the mere existence of a scintilla of evidence in support of Plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for Plaintiff. *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

## II.

Michigan's dramshop law provides that a bar "shall not directly or indirectly, individually or by a clerk, agent, or servant sell, or give alcoholic liquor to a person who is visibly intoxicated." Mich. Comp. Laws § 436.1801(2). "The act provides a remedy for plaintiffs injured by a visibly intoxicated person, allowing suit to be brought against a retail

2

establishment that unlawfully sells alcohol to a minor or a visibly intoxicated person, if the unlawful sale is a proximate cause of the injury." *Reed v. Breton*, 718 N.W.2d 770, 774 (Mich. 2006) (citing Mich. Comp. Laws § 436.1801(3)).

In order to sustain his burden of proof on his dramshop act claim against Louie's Plaintiff must introduce evidence from which a trier of fact could find that Louie's served Ozell Quinn alcohol while Quinn was "visibly" intoxicated. Mich. Comp. Laws 436.1801(2); *Miller v. Ochampaugh*, 477 N.W.2d 105, 109 (Mich. Ct. App. 1991). "A plaintiff fails to sustain his burden of establishing a case under the dramshop act when the evidence is insufficient and leaves the jury to speculation and conjecture." *Lasky v. Baker*, 337 N.W.2d 561, 563 (Mich. Ct. App. 1983). "Eyewitness testimony of visible intoxication is not required to establish a dramshop claim; visible intoxication may be proven by circumstantial evidence and the inferences drawn therefrom." *Dines v. Henning*, 459 N.W.2d 305, 308 (Mich. Ct. App. 1990) (Kelly, J., dissenting) *rev'd*, 466 N.W.2d 284 (Mich. 1991) (reversing majority for the reasons stated in Judge Kelly's dissent); *see also Lasky*, 337 N.W.2d at 563 ("If the combination of the circumstantial evidence and the permissible inferences drawn therefrom are sufficient to establish a prima facie case, a directed verdict is improper.").

Under Michigan law a person is intoxicated "when, as a result of drinking alcoholic liquor, his or her mental or physical senses are impaired." Mich. Civ. J. 75.02. "A person is visibly intoxicated when the person's intoxication would be apparent to an ordinary

3

observer." *Miller v. Ochampaugh*, 477 N.W.2d 105, 109 (Mich. Ct. App. 1991) (citing *Heyler v. Dixon*, 408 N.W.2d 121, 127 (Mich. Ct. App. 1987)); *see also* Mich. Civ. J. 75.02.

The Michigan Supreme Court noted in *Reed v. Breton*, 718 N.W.2d 770 (Mich. 2006), that circumstantial evidence such as blood alcohol levels and time spent drinking are not sufficient, in and of themselves, to show that the individual was visibly intoxicated at the time he was served:

> "[V]isible intoxication" focuses on the objective manifestations of intoxication. While circumstantial evidence may suffice to establish this element, it must be actual evidence of the visible intoxication of the allegedly intoxicated person. Other circumstantial evidence, such as blood alcohol levels, time spent drinking, or the condition of other drinkers, cannot, as a predicate for expert testimony, alone demonstrate that a person was visibly intoxicated because it does not show what behavior, if any, the person actually manifested to a reasonable observer. These other indicia – amount consumed, blood alcohol content, and so forth – can, if otherwise admissible, reinforce the finding of visible intoxication, but they cannot substitute for showing visible intoxication in the first instance.

*Reed*, 718 N.W.2d at 776-77.

Defendant Louie's contends that the evidence Plaintiff has produced is limited to blood alcohol level and time spent drinking, and that, under *Reed*, such evidence is insufficient to create a question of fact as to whether Louie's furnished alcohol to Quinn while he was visibly intoxicated. In support of this position, Louie's has focused on evidence that between approximately 10 p.m. and 2 a.m., while Quinn was at Louie's, he consumed a total of four to five glasses of beer, was not involved in any physical or verbal altercations, did not experience coordination or balance problems, did not slur his speech, and gave no

4

sign that he was visibly intoxicated. (Dkt. No. 95, Ex. A, Quinn Dep. 8, 15-18; Dkt. No. 95, Ex. B, Police Rpt. 12.) Louie's also notes that following the accident Quinn's blood alcohol level was 0.09% and 0.08%. (Dkt. No. 93, Ex. C, BAC Police Rpt. 13.)

Louie's has taken an overly-circumscribed view of both the facts and the law. In addition to the evidence recited by Louie's, there is also evidence that Quinn had been drinking prior to going to Louie's, including 3 or 4 cans of beer at a barbecue, and a few more beers either at home or at a relative's house. (*Id*. at 12-13.) When Quinn left Louie's, Quinn did not drive his car. Instead, his friend Cara drove Quinn in Quinn's car to her house on Empire, which was approximately ten minutes from Louie's. (*Id*. at 20-22.) Quinn had driven less than a block from Cara's house when he hit Plaintiff's decedent on the shoulder of the road. (*Id*. at 25; Dkt. 93, Ex. A, Traffic Rpt.) Quinn did not drink any more alcohol between leaving Louie's and the accident. (Quinn Dep. 25.) Quinn ran from the accident and was arrested at his home. The police report indicates that his eyes were somewhat bloodshot, there was the odor of alcohol emanating from his person, particularly from his breath, and he was too intoxicated to recall clearly how he had gotten from the bar to Cara's residence. (Police Rpt. 12-13.) At 5:00 a.m., his preliminary breath test results indicated a 0.15% blood alcohol content. (Quinn Dep. 28.) His blood alcohol level was still 0.09 approximately eight hours after he left Louie's. (Police Rpt. 13.)

In *Dines* the Michigan Supreme Court held that it was error to enter summary judgment on the plaintiff's dramshop claim because there was evidence that the decedent had

been drinking since the afternoon, that he had driven wildly, that he had been too loud and boisterous at the bar, that his blood alcohol level was 0.24% at the time of the accident, and an expert testified that there was probability in excess of ninety percent that he would have manifested visible signs of intoxication. 459 N.W.2d at 309 (Kelly, J., dissenting).

In *Heyler v. Dixon*, 408 N.W.2d 121 (Mich. Ct. App. 1987), the Michigan court of appeals held that based on the amount of beer consumed, the length of time Dixon was in the lounge, combined with an accident occurring within minutes after he left the lounge, and the testimony of officers that he smelled highly of intoxicants, was "more than sufficient evidence from which a jury could reasonably conclude that Dixon was 'visibly intoxicated' when he was served beer." *Id*. at 128.

Although the Michigan Supreme Court emphasized in *Reed* that "visible intoxication" focuses on the "objective manifestations of intoxication," *Reed* did not overrule the holdings in *Dines* or *Heyler* that circumstantial evidence may suffice to establish this element. *Reed*, 718 N.W.2d at 776. As noted in *Shaina v. Compton*, No. 274045, 2007 WL 2780997, at *1 (Mich. Ct. App. Sept. 25, 2007), although evidence involving the amount of alcohol consumed and the length of time spent drinking, standing alone, is insufficient to establish visible intoxication, these factors, when considered in conjunction with the person's behavior before entering, while in, and after leaving the bar, may be sufficient to create a material question of fact on which reasonable minds could differ. *Id*. at *2.

In this case, evidence of Quinn's blood alcohol level and time spent drinking, together

with evidence that Quinn's friend drove Quinn's car upon leaving the bar, that Quinn drove onto the shoulder of the road within a short time after leaving the bar, and that Quinn had red eyes, smelled of intoxicants, and could not answer detailed questions after the accident, together create a material issue of fact as to whether Quinn was visibly intoxicated when he was served alcohol at Defendant Louie's.

Defendant Louie's has also requested that its request for admissions (Dkt. No. 57) be deemed admitted because of Plaintiff's untimely responses. Defendant's request for admissions was served on March 1, 2012, and Plaintiff did not file her responses until June 7, 2013.

The Federal Rules provide that "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3). A longer time may be ordered by the court. *Id.* A matter admitted under Rule 36 is conclusively established unless the court, on motion, permits the admission to be withdrawn. Fed. R. Civ. P. 36(b). The Court may permit admissions to be withdrawn "if it would promote the presentation of the merits of the action" and "if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Fed. R. Civ. P. 36(b). A formal motion to withdraw is not required. *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 154 (6th Cir. 1997).

All proceedings in this case were stayed from March 1, 2012, until four weeks after

counsel was appointed for plaintiff pursuant to the Court's *Pro Bono* Plan. (Dkt. No. 59.) After counsel was appointed on March 27, 2012, proceedings remained stayed due to difficulties with the then-personal representative. The stay was lifted on October 15, 2012. (Dkt. No. 71.) However, the Court gave the parties 30 days from the appointment of the successor personal representative to respond to any written discovery issued prior to the stay. (*Id.*) Mr. Sauer was appointed as the successor person representative on December 10, 2012, and was substituted in as Plaintiff in this matter on February 1, 2013. (Dkt. No. 75.)

The Court accepts Plaintiff's counsel's representation that his untimely responses were the result of confusion regarding the continued role of appointed counsel after the appointment of the successor personal representative who was himself an attorney. The basis for counsel's confusion regarding his role in this case is well-reflected in the pleadings. (*See* Dkt. No. 76, Mot. to Withdraw; Dkt. No. 79, Notice to Sauer re Appearance; Dkt. No. 80, Sauer Resp.; Dkt. No. 86, Letter from Clerk to Sauer re electronic filing.) The Court is satisfied that the delay in responding to the requests for admission was not intentional, and that Plaintiff's counsel proceeded with appropriate diligence once his role in this case had been clarified. Nevertheless, because the responses were not timely filed, the matters are deemed to have been admitted pursuant to Rule 36(a)(3).

The Court will, however, permit Plaintiff to withdraw the admissions. The admissions concern the issue of visible intoxication, a key element of Plaintiff's claim against Defendant Louie's. Permitting the withdrawal of the admissions would promote the

8

presentation of the merits of the action. As noted above, there are issues of fact concerning whether Quinn was visibly intoxicated when he was served alcohol by Defendant Louie's. Moreover, Defendant Louie's has not asserted that it would be prejudiced if the Court were to permit the withdrawal of the admissions. *See Kerry Steel*, 106 F.3d at 154 (noting that prejudice under Rule 36(b), relates to special difficulties a party may face caused by a sudden need to obtain evidence upon withdrawal or amendment of an admission). Finally, the Court is satisfied that, contrary to Defendant's assertions, Plaintiff's responses to the requests for admission are not deficient as they "fairly respond" to the substance of Defendant's requests for admission. *See* Fed. R. Civ. P. 36(a)(4). For all these reasons, Defendant Louie's motion for summary judgment will be denied.

An order consistent with this opinion will be entered.


Dated: September 18, 2013                    /s/ Robert Holmes Bell
                                             ROBERT HOLMES BELL
                                             UNITED STATES DISTRICT JUDGE